IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAIL A., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 21 C 502 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Gail A.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The parties filed cross-motions for summary judgment. [ECF Nos. 13, 14].

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

1

For the reasons discussed below, Claimant's Motion for Summary Judgment [ECF No. 13] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 16] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

## PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits, alleging a disability beginning October 9, 2018. (R.19). The claim was denied initially on June 7, 2019, and on reconsideration on November 15, 2019. (R.19). Claimant requested a hearing before an administrative law judge ("ALJ"). (R.19). In light of the COVID-19 pandemic, a remote hearing was held before ALJ Michael Dunn on October 26, 2020, and Claimant was represented by a non-attorney representative at the hearing. (R.19). Claimant and Diane Regan, an impartial vocational expert, testified by telephone at the hearing. (R.19). ALJ Dunn issued an unfavorable decision on November 30, 2020, finding that Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R.19-28). On January 11, 2017, the Appeals Council declined to review the ALJ's decision so it became the final decision of the Commissioner. (R.1-5).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since October 9, 2018, the alleged onset date of her

2

disability. (R.21). At step two, the ALJ found Claimant had the following severe impairments: cervical dystonia affecting the neck, back, and shoulders and spasmodic torticollis. (R.21). At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R.21). In particular, the ALJ concluded that the severity of Claimant's impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 1.02 or 1.04. (R.22).

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) except she could only "occasionally climb ramps and stairs, never ladders or scaffolds, frequently balance, occasionally stoop, kneel, crouch, and crawl. Limited to occasional overhead reaching. There should be no exposure to workplace hazards such as unprotected heights and hazardous machinery. There should be no operation of a motor vehicle as a work duty. The work must allow for the exercise of a sit/stand option, which I define as follows: there must be work that can be done in both sitting and standing position, such that the change in position will not cause the worker to go off task. After sitting for 30 minutes, should have the option to stand for up to 10 minutes; after standing for 10 minutes, should have the option to sit for up to 30 minutes." (R.22).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

At step four, the ALJ found that Claimant was not capable to perform any of her past work. (R.26). At step five, relying on testimony from the vocational expert, the ALJ found that considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Claimant can perform, including sorter and assembler. (R.27). For all these reasons, the ALJ concluded that Claimant has not been under a disability as defined in the Social Security Act from October 9, 2018 through November 30, 2020, the date the ALJ issued his decision. (R.28).

Claimant timely submitted a request to the Appels Council to review the ALJ's decision, but the Appeals Council denied that request on January 15, 202, causing the ALJ's decision to constitute the final decision of the Commissioner. (R.1-6). *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thereafter, Claimant filed this lawsuit seeking judicial review, and this Court has jurisdiction to review this matter. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

When a claimant files an application for disability insurance benefits and/or supplemental security income, she bears the burden under the Social Security Act to bring forth evidence that proves her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. § 416.920)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when

5

there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues the ALJ's decision cannot stand because: (1) the ALJ rejected all the medical opinion evidence and improperly relied on his own lay opinion when determining Claimant's RFC and finding her not disabled; (2) the ALJ improperly discounted Claimant's subjective symptoms allegations; and (3) the ALJ crafted an RFC that does not accommodate all of Claimant's impairments and limitations in combination. The Court will address Claimant's arguments below.

### A. The ALJ's Decision to Disregard All Medical Opinions Created a Gap in the Medical Evidence

An ALJ "must rely on expert opinions instead of determining the significance of particular medical findings [himself]." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). Here, the ALJ considered three medical opinions when formulating Claimant's RFC: (1) state agency consultant Dr. Marion Panepinto's opinion dated May 30, 2019 for an initial determination (R.65-74); (2) state agency consultant Dr. Ranga Reddy's opinion dated November 13, 2019 on reconsideration (R.76-85); and (3) Claimant's treating physician Dr. Chander Gill's opinions dated May 23, 2019 and August 27, 2020 (R.386-01, 425-31). The ALJ found all these opinions "not persuasive." (R.26).

In the Court's view, the ALJ's decision to discount all medical opinion evidence in the record "created an evidentiary gap that rendered the ALJ's RFC unsupported by substantial evidence." *Ana M.A.A. v. Kijakazi*, 2021 WL 3930103, at *2 (N.D. Ill. 2021). While a claimant bears the burden of proving disability, the ALJ has a duty to develop a full and fair record – a duty he did not fulfill in this case. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). When the ALJ discounted all three medical opinions of record, he had an obligation to recruit a medical expert or solicit updated opinions from the state agency physicians and/or Claimant's treating physician to fill the resulting evidentiary gap. *See Daniels v. Astrue,* 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012). Without the aid of any medical opinion or medical expert, the Court cannot determine whether the ALJ made supportable and reasonable conclusions based on the record evidence, or improperly used his own lay opinions to fill the evidentiary

7

void caused by the rejection of all medical opinion evidence. This fatal flaw requires remand here.

That is not to say it was necessarily error for the ALJ to discount the three medical opinions contained in the record. It is within the ALJ's purview to weigh medical opinions consistent with the regulations. 20 C.F.R. § 404.1520c(b)(2), (c)(1). But the consequences of the ALJ's decision to reject all medical opinion evidence here gives the Court some pause as to whether the RFC was supported by substantial evidence in a case where the ALJ found that Claimant has severe impairments that substantially limited her ability to function but she still is able to perform sustained full-time work. Because the Court cannot say with reasonable certainty that the ALJ did not substitute his own judgment for the opinions of the medical experts, in particular Claimant's treating physician, without relying on other medical evidence or authority in the record, remand is required for a more fulsome development of the record, evaluation of Claimant's limitations, and recruitment of a medical expert or requests for updated opinions from the state agency physicians and/or Claimant's treating physician, if necessary.

The Court also finds that the ALJ's explanation about his evaluation of the opinion of Dr. Gill, Claimant's treating physician, is deficient. Although an ALJ is no longer required to assign controlling weight to the opinion of a treating physician, an ALJ still should properly consider whether the treating physician's opinion is consistent with the record as a whole as well as the nature and extent of the treatment relationship. 20 C.F.R § 1520c. In this case, in a rather perfunctory

8

manner, the ALJ found the opinions of Claimant's treating physician unpersuasive because Dr. Gill did not include "objective clinical findings for support" (R.23) and Dr. Gill's opinions "were generally inconsistent with other evidence" (R.23-24), notwithstanding that the opinions were largely consistent with the medical evidence in the record.

The ALJ interpreted Dr. Gill's opinion as stating Claimant is disabled because she "cannot drive to work." (R.26). The Court reads Dr. Gill's opinion differently and finds that the ALJ's evaluation of Dr. Gill's opinion is conclusory and flawed. Dr. Gill specifically stated: "Currently unable to drive and has difficulty with sitting, standing, or walking and cannot look in one direction for extended periods due to risk of exacerbation" (R.26). A common sense reading of Dr. Gill's opinion does not suggest that he concluded that Claimant is disabled because she cannot drive to work but rather that Claimant is significantly limited as a result of her cervical dystonia, and that he reached this opinion based in part on his continued treatment of Claimant. (R.26). Claimant testified that she saw Dr. Gill every three months. (R.46).

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In the Court's view, the explanation the ALJ gave for not finding Dr. Gill's opinion persuasive is deficient and does not accurately characterize the record evidence. In addition, because the ALJ rejected all medical opinion testimony, there

9

is an evidentiary gap in the record. Therefore, this case must be remanded for further explanation.

### B. The RFC Is Not Supported by Substantial Evidence

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

In this case, the ALJ summarized the medical evidence in the record, but he did not provide any explanation as to *how and why* the RFC "is supported by the objective medical evidence." (R.26). A general discussion of the medical record does not satisfy an ALJ's obligation to explain how he arrived at his RFC finding and does not create the logical bridge from the evidence to that conclusion. *See Samuel v. Barnhart*, 316 F. Supp. 2d 768, 772 (E.D. Wis. Apr. 29, 2004) ("By failing to include in his narrative discussion a description of how the medical evidence supported his findings, the ALJ committed a clear error of law."); *see also Scott v. Astrue*, 647 F.3d

10

734, 740 (7th Cir. 2011) (remanding the case after the ALJ failed to explain how she reached her conclusions about the claimant's physical capabilities in assessing her RFC).

The ALJ's RFC formulation is detailed and contains numerous specific physical limitations, including that Claimant could perform sedentary work except she could only "occasionally climb ramps and stairs, never ladders or scaffolds, frequently balance, occasionally stoop, kneel, crouch, and crawl. Limited to occasional overhead reaching. There should be no exposure to workplace hazards such as unprotected heights and hazardous machinery. There should be no operation of a motor vehicle as a work duty. The work must allow for the exercise of a sit/stand option, which I define as follows: there must be work that can be done in both sitting and standing position, such that the change in position will not cause the worker to go off task. After sitting for 30 minutes, should have the option to stand up for to 10 minutes; after standing for 10 minutes, should have the option to sit for up to 30 minutes." (R.22). The ALJ, however, did not offer any explanation of how he determined those restrictions and on what specific evidence he relied. This leaves the Court with nothing to review to determine whether the ALJ's RFC finding is supported by substantial evidence.

The Court cannot assume or speculate what the ALJ was thinking to support the RFC limitations. Simply citing a few specific medical facts or exhibits in the record is not enough. *See* SSR 96-8p (requiring that the "RFC assessment must include a narrative discussion describing how the evidence supports the conclusion").

11

The ALJ's decision contains no markers for the Court to follow and discern the path the ALJ followed in reaching his conclusion. The ALJ erred by not providing a narrative discussion of how the record evidence supported his determination that Claimant is limited to performing a restricted range of sedentary work activities. The Court is left with two critical and dispositive questions: (1) how does the clinical evidence support the ALJ's RFC assessment; and (2) how did the ALJ account for Claimant's subjective complaints in that RFC assessment? Nowhere in his opinion does the ALJ answer these questions. The Court would need to speculate to answer those questions, and that is something a court cannot do in reviewing an ALJ's decision.

An ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There is no logical bridge in this case, and remand is required.

### C. The ALJ's Subjective Symptom Analysis Is Flawed

It is well-settled that an ALJ cannot cherry pick which evidence to evaluate and disregard other critical and relevant evidence. *Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014). Although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, as discussed above, he

12

must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). It is well-settled law that mere boilerplate statements and conclusions cannot support an ALJ's decision, and an ALJ must set forth "specific reasons" for discounting subjective reports of symptoms. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *Steele v. Barnhart,* 290 F.3d 936, 941-42 (7th Cir. 2002).

At the hearing, Claimant testified that she experienced pain in her neck, shoulders, and back and that her head was constantly turned to the left. (R.46-49). She also testified that she drove minimally and only when she had to get to physical therapy. (R.42-43). She further explained that activity exacerbated the pain and that she would have to rest three to four times per day after doing chores around the house. (R.49-51). The ALJ did not address Claimant's testimony that she needed to stop and rest or lie down during the day after physical activity. (R.51-52). Nor did the ALJ explain why he did not credit Claimant's testimony. It is relevant to the Court to know what, if any, weight the ALJ gave to Claimant's testimony and how the medical evidence is consistent with his determination that Claimant is capable of sedentary work despite her pain. It is troubling that the record is silent in that regard.

In the Court's view, the ALJ did not sufficiently discuss how the record evidence undermined Claimant's credibility nor did he adequately explain why he accepted some of her complaints but not others and which complaints were not supported by the medical evidence and why. The ALJ simply recited Claimant's medical history and then concluded: "Although the presence of pathology is

13

objectively supported in the objective evidence, the degree of impairment alleged, *i.e.*, total disability, is not supported for any durational period during the time at issue." (R.25). The ALJ's RFC analysis does not mention Claimant's need for unscheduled breaks due to pain; nor did the ALJ explain how Claimant's episodes of pain and the need for breaks were inconsistent with the record or why they were not included in the RFC. The failure to discuss that evidence is problematic because the vocational expert testified that the need for unscheduled breaks would be work preclusive. (R.61-62).

Without a more fulsome discussion, it is impossible for this Court to conclude that the ALJ built an accurate and logical bridge from the evidence to her conclusions. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Again, the Court cannot assume or speculate what the ALJ was thinking. The ALJ must provide a sufficient explanation as to what evidence he considered, how he weighed that evidence and why he made the findings he made. An inventory of the evidence in the record, which is what the ALJ provided in this case, is not a substitute for an explanation of how that evidence figured in the ALJ's final decision.

In the Court's view, the ALJ did not provide sufficient explanation of what evidence supports the RFC finding and why certain limitations were included and others were not, particularly in light of Claimant's hearing testimony, most of which the ALJ did not discuss. While Claimant's course of treatment, including physical therapy and Botox injections, may have reduced her pain and increased her functionality at the time, that does not diminish Claimant's continued complaints of

14

pain and physical limitations. Of note, Claimant made clear that she had to get the Botox injections every three months because the affects would wear off. (R.46-47). She further testified that while the physical therapy helped to a certain extent, she experienced constant pain. (R.46-47). This Court applies a common-sense reading to the entirety of an ALJ's decision, and common sense undercuts the ALJ's decision here. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Therefore, remand is required.

Claimant also argues that the ALJ failed to adequately consider her obesity and did not account for how her obesity, in combination with her other impairments, affected her ability to work pursuant to SSR 02-1p. SSR 02-1p explains that the "combined effects of obesity with other impairments may be greater than what might be expected without obesity." SSR 02-01p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Notwithstanding that "obesity is no longer a standalone disabling impairment ... the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill,* 888 F.3d 323, 328 (7th Cir. 2018).

Here, the ALJ acknowledged Claimant's obesity and found that it was a non-severe impairment. When determining an individual's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009); *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir.2003). The mere statement that Claimant's obesity is not severe because it does not "significantly limit her ability to perform work," without more, is

15

conclusory and not sufficient for the Court to conclude that the ALJ sufficiently considered Claimant's obesity when considering the combination of her impairments. On remand, the ALJ should provide a more fulsome explanation.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In this case, the ALJ did not address Claimant's complaints about her pain, her need to lie down frequently during the day, and her inability to look straight ahead for any sustained time. Remand is required for these reasons. This is not an instance in which the Court is reweighing the evidence. Rather, the ALJ did not explain his decisional process sufficiently for the Court to be able to conclude that his ultimate decision is supported by substantial evidence under the controlling standard of review.

The Court expresses no opinion on the decision to be made on remand. But the Court does encourage the ALJ to do what is necessary to build a logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

16

## CONCLUSION

Accordingly, for all of the reasons set forth above, Claimant's Motion for Summary Judgment [ECF No. 13] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 16] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 6, 2023